3230297 Leah Savenok, Appellant v. Nationstar Mortgage LLC, doing business as Mr. Cooper and Wheaton Bank & Trust Company, Appalese. Ms. Savenok, you may proceed with your argument. Your Honor, I am Leah Savenok, representing myself, Pro Se. I am glad that the State of Illinois's judicial system allows Pro Se representation and has a good data system to help people like us with Pro Se representations. I totally agree and concur with the upcoming oral argument by my husband, Pavel Savenok. Because both of us were listed as plaintiffs in the specific performance case number 18 CH1324 in the Circuit Court of DuPage County and represented at the time by our attorney, David Boersma. We both have to file for Pro Se appearance separately for the same case. My husband will agree to case and I am in total agreement with all of his statements and arguments that will be presented in the hearing at 4 p.m. today, May 23rd. My husband, Pavel Savenok, and I have seven grown-up children and 19 grandchildren. I have good education, I speak four languages, and I consider myself a reasonable person. In 2007, our net worth was comfortably about $10 million with income from different sources that was over $600,000 a year. In 2008, the real estate crash came. The next few years, businesses were losing money and our financial situation became more difficult, but we still had significant assets. When we built our house, 102 East Farnham in Wheaton, in the year of 2000, we had around $800,000 mortgage, very small compared to the size of our house. After the September 11, 2001, market crashed. My husband drew an emergency loan over $1 million on the house to bail out one of his construction companies. It was the only option to borrow money at the time. Then, the total mortgage was financed with Aurora loan. Eventually, our businesses came back in a few years, but another crash happened in 2008. By the end of 2011, our income was in the negative, but we survived by selling our assets in very unfavorable market conditions, sometimes for pennies of the dollar. At the same time, by November of 2011, we were paying up to over $13,000 per month in interest only on our mortgage payment, always on time. After the Lehman Brothers crash in 2008, the original mortgage was with Aurora mortgage, which as far as I know, was a part of the Lehman Brothers portfolio. The interest rate was very low and there were governmental programs for mortgages modifications. Our adjustable mortgage interest rate was up to 11% with interest only payments. We reached out to our mortgage holder, Aurora loan, and asked to modify our mortgage to reflect the percent interest rate, which were around 3% to 5% at the time. Some government programs at that time were around 3%. Even principal reduction was not unusual at that time, after the government bailout of the Lehman Brothers. All we were asking our mortgage holder, Aurora loan, was to lower our interest rate, which would bring us to a much more comfortable financial situation. The answer from Aurora loan was that we are not qualified for any type of modifications because we are paying on time. In order to qualify, we have to be 90 days late. They recommended calling back when we have 90 days late on payment. As they told us, we reached to them in February 2012, after being 3 months late on our mortgage payments, thinking it will be quick and we will come back to a good credit rating with banks in a short time. Having multiple businesses, my husband's credit standing with the banks was crucial for businesses. The next couple months, we sent all kinds of documents in order to modify our mortgage. Everything was moving well and we were told our mortgage will be modified to lower the interest rate. Then after over a month of no communication, suddenly we received a letter stating that our mortgage is being modified. Then in a couple months, we received a letter from Nation Star telling us that they are our new mortgage holder and we should pay all late payments and penalties or they will proceed with a foreclosure procedure against our property. At that time, we had no way back. Our financial standing with banks was compromised and our businesses heavily dependent on my husband's personal credit worthiness. By September 2014, the foreclosure procedure came to a point when a court ordered the foreclosure sheriff's sale on our house. My husband, as the only mortgagee, was forced to file Chapter 11 bankruptcy. All businesses under his name were sold under unfavorable conditions to pay creditors. Eventually, Nation Star destroyed us financially. In the meantime, there were lots of misleading communications from Nation Star. One thing was obvious to us. We are facing a well-organized entity. Who knows how many people were victimized by it? There were a few short sales offers from 2015 to 2018. In 2018, a short sale offer for $1.1 million was accepted by Nation Star. Finally, negotiation came to an end and closing was in a few days. By then, we understood whom we were dealing with. We were extremely careful with communications and obviously trust was at a low point at that time. As we see it now, we were right. There were two attempted short sales on the exact same property in a short sale to the same buyer at the same price. Eventually, the specific performance case was filed on October 29, 2018. The most important facts are that defendant Nation Star agreed to a short sale of the plaintiffs, Pavel and Leah that short sale agreement by requiring that the short sale be completed on the same date that the final approval was issued on September 7, 2018. There are 23 pages affidavit from attorney Boersma who represented us on the specific performance case with over 1,000 pages of supporting documents. Now I want to quote some of the appealees. Unfounded statement at the defendant appealee response. Brief page one, last paragraph. Quote, because buyer refused to go through with the short sale, absent defendant agreement to his alteration. Plaintiff was upset that the sale did not go through and that she would not be able to remain in the property once the foreclosure concluded. The end of the quote. Yes, I was upset by Nation Star destroying us financially, but fact is that the total short sale affidavit provided by Nation Star was signed by the sellers on August 28, 2018, C-225-227. It was the buyer's initiative to negotiate modifications to the short sale affidavit. Because the buyer was involved in negotiations with the developer in regards to development plans for the property and there was undetermined time to finalize those plans, including the possibility to sell part of the property to the developer. The buyer wanted to disclose it on the short sale affidavit. A provision for renting the property was added because the property should be occupied before the final plans were developed. We believe the defendant, Nation Star, is playing with the legal terminology of forming a contract and the meaning of approval process, knowing that they can always shortcut it by filing a summary judgment against the potential complaints. Nation Star intentionally created a system of inputting and deceiving customers that they have final approval to close by communicating through phone calls and emails by the third parties hired by NationStar and Equator.com. It leads customers to sign documents under intense pressure at the moment of closing documents they originally did not agree to, shifting legal responsibility into customers for violating the terms of those documents in the future. It creates a system where lots of customers could be legally labeled for violating NationStar terms and NationStar can go after those defendants' motion for summary judgment because reasonable persons might draw different inferences from the undisputed facts. The defendant should present his motion for summary judgment. Therefore, for the foregoing reasons, the plaintiff, Appellant Leah Savenok, respectfully requires this court vacancies to summary judgment on the trial court and awards any such other and further relief as this court deems just and prepare at the promises. Thank you. Thank you, Mrs. Savenok. You will have time to reply to Mr. Hallberg's argument. Okay. Okay. Okay. Mr. Hallberg, you may respond to Mrs. Savenok's argument now. Good afternoon, your honors, and may it please the court. This case centers around short-sale negotiations that, unfortunately, and due to factors out of NationStar's control, could never quite materialize into an actual agreement. Now, a short sale of a property that has a mortgage on it means that a lender agrees to accept less than the full amount owed as part of a sale from the borrower to a third party. So, short sales can result in significant Therefore, NationStar, just like any other lender, requires certain terms to be met before it can approve a short sale. In this case, the Savenoks and the proposed buyer never met those terms. In particular, the main issue in this case is that there was a form short sale affidavit that was never completed to the satisfaction of NationStar, and hence there was no meeting of buyer wanted to add additional language to the affidavit, which was rejected by NationStar. It was never approved. The appellants point to an email saying that there was final approval to close. However, that email was very clearly referring just to the amounts in the settlement statement, and the citation to the record is C-195. Those alterations that were made to the short sale affidavit were never approved by NationStar. There was never a meeting of the minds. As such, the trial court correctly held that there was no contract, and therefore, there could be no specific performance. The trial court's ruling granting summary judgment in summary, there are no genuine issues of material fact that the unaltered short sale affidavit was required to close, and also that no closing occurred because the buyer would not agree to the unaltered language. If your honors have any questions, I'm happy to answer them, but otherwise we can stand on the briefs. Justice Albrecht, any questions? I have no questions. Okay. Okay. Thank you, Mr. Halberg. Mrs. Savanach, you may reply to the position and arguments of Mr. Halberg at this time. Yeah. All I know that we had the agreement from their side. They said that they agree. We had the paper saying that NationStar agreed to the sale, and we had the papers. Everything was done. Yeah. At that time, I had little children, so my husband was at all the courts and hearings, and he knows a lot, and I just agree with him. So, more questions, if you will have, he can answer when he's going to be representing his oral argument at 4 o'clock today. Okay. Very good. Do you have anything further to say on your appeal at this time, Mrs. Savanach? Yeah, it's just, it was very painful to see a successful man, my husband, to be put so down. That's all. He's a hardworking person. Yes, I'm sure. At this time, we, the court would like to find out if Mr. Savanach would like to proceed with his appeal, or wait till 4 o'clock. He will start right now. Right now, okay. He can start right now, yeah. Okay, very good. Any objections, Mr. Halberg? None at all, thank you, Judge. Okay, thank you. Thank you. And your argument will be considered by the court, and a written decision will issue.